BLAKE G. HALL, ESQ.
SAM L. ANGELL, ESQ.
HALL ANGELL STARNES, LLP
1075 S. Utah Avenue, Suite 150
Idaho Falls, Idaho 83402
Telephone (208) 522-3003
Fax (208) 621-3008
*ISB Nos. 2434 and 7012*
bgh@hasattorneys.com
sla@hasattorneys.com

Attorneys for Plaintiff Orin Duffin

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ORIN DUFFIN, an individual,<br><br>          Plaintiff,<br><br>v.<br><br>IDAHO STATE UNIVERSITY, ARTHUR C. VAILAS, President of Idaho State University in his official capacity; JEFF TINGEY, Athletic Director of Idaho State University in his official capacity; BOBBY GOELTZ, head coach of the Idaho State University Men's Tennis Team; and NATE GROSS, Assistant Coach of the Idaho State University Men's Tennis Team; and JOHN DOES I-X,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMES NOW the above-entitled Plaintiff, ORIN DUFFIN, by and through counsel of

record, HALL ANGELL STARNES, LLP, and seeks redress against Defendants, IDAHO

STATE UNIVERSITY, ARTHUR C. VAILAS, President of Idaho State University in his

official capacity, JEFF TINGEY, Athletic Director of Idaho State University in his official

COMPLAINT AND DEMAND FOR JURY TRIAL - 1

capacity, BOBBY GOELTZ, and NATE GROSS and JOHN DOES I-X, for violations of

Plaintiff's civil rights.  Plaintiff alleges the following:

## INTRODUCTION

1.  Plaintiff ORIN DUFFIN seeks redress for religious discrimination, sexual harassment,

    and retaliation by the above-named Defendants, in violation of his rights as secured under

    the United States Constitution and state and federal common law.

2.  This is an action brought under the First Amendment; Fourteenth Amendment; 42 U.S.C.

    §§ 1983 and 1988; and state and federal common law for monetary relief against these

    Defendants arising out of the violation of Plaintiff's civil rights.

## JURISDICTION

3.  This Court has original jurisdiction over claims brought pursuant to 42 U.S.C. § 1983 and

    1988, and the U.S. Constitution.

4.  The jurisdiction of this Court is predicated on 28 U.S.C. §§ 1331 and 1343.

## THE PARTIES

5.  Plaintiff, ORIN DUFFIN, is a resident of the state of Idaho, and at all times relevant

    hereto, was enrolled as a student athlete at Idaho State University on a tennis scholarship.

6.  Defendant IDAHO STATE UNIVERSITY (ISU), is a subdivision or branch of the state

    of Idaho, located in Pocatello, Idaho.

7.  Upon information and belief, Defendant ARTHUR C. VAILAS, is a resident of the state

    of Idaho, and at all times relevant hereto, was the President of Idaho State University.

8.  Upon information and belief Defendant JEFF TINGEY is a resident of the state of Idaho,

    and at all times relevant hereto, was the Athletic Director for Idaho State University.

9.  Upon information and belief, Defendant BOBBY GOELTZ, is a resident of the state of Idaho, and at all times relevant hereto, was the Head Tennis Coach for the Idaho State University Men's Tennis Team.

10. Upon information and belief, Defendant NATE GROSS, is or was a resident of the state of Idaho, and at all times relevant hereto, was the Assistant Tennis Coach for the Idaho State University Men's Tennis Team.

## FACTS

11. Plaintiff was born and raised in Idaho Falls, Idaho. Plaintiff is a member of the Church of Jesus Christ of Latter-Day Saints (also known as LDS or Mormon church), and actively observes his religion.

12. While in high school, Plaintiff competed in tennis and was able to receive various scholarship offers to play tennis in college.

13. In 2014, Idaho State University offered Plaintiff a scholarship to play tennis. Plaintiff accepted the offer, and enrolled for the 2014-2015 year at ISU as a freshman player on the Men's Tennis Team. Plaintiff was excited that a life-long dream to attend college on a tennis scholarship had been fulfilled.

14. On August 25, 2014, fall semester began at ISU, and Plaintiff began to interact with coaches and teammates on the men's tennis team. Early in the season Plaintiff's religious affiliation became known to his tennis coaches and teammates. Plaintiff learned that he was the only LDS player on the ISU Men's Tennis Team. Coach Gross and Coach Goeltz began to unlawfully single Plaintiff out for his play and were overtly critical and verbally aggressive toward him because of his religious affiliation.

COMPLAINT AND DEMAND FOR JURY TRIAL - 3

15. Almost immediately, assistant coach Gross began to harass Plaintiff because of his religious affiliation and beliefs. The conduct intensified over the course of the season and Plaintiff was harassed and subjected to offensive questions and disparaging and discriminatory remarks and conduct because of his religious affiliation. Gross's conduct had the effect of sanctioning team-wide religious based harassment and discrimination directed toward Plaintiff by team members. Head coach Goeltz did nothing to stop the discrimination and harassment, and at times participated in the discrimination and harassment.

16. Coaches Goeltz and Gross asked Plaintiff inappropriate questions about sexual activities as they related to Plaintiff's religious beliefs. Coaches Goeltz and Gross used profane language including sexual references directed at Plaintiff due to his religious beliefs for the purpose of discriminating against Plaintiff during the course of ISU sanctioned practices, tournaments, and team events.

17. For instance, Plaintiff was questioned by coach Gross about whether "Mormons can masturbate", "if Plaintiff would sleep with women selected by Gross", if "Plaintiff was permitted to go to strip clubs as long as he didn't touch the dancers", and why "Plaintiff was celibate." All of this harassment was directed toward Plaintiff in the context of conversations about and disparaging remarks directed toward his LDS religious beliefs.

18. The harassment peaked after he informed the team that he had received his mission call and would be serving his church in Taiwan following the 2014-2015 school year. As a tenet of his religion, Plaintiff had applied for and was preparing to serve a mission for his church following the completion of his freshman year of college. When Coach Goeltz

found out that Plaintiff had accepted a call to serve a mission, he retaliated and prohibited Plaintiff from playing in any further doubles matches.

19. As part of the tennis season, the Men's Tennis Team would travel to tournaments in various parts of the country. On March 19, 2015, the team traveled to Southern Utah and Arizona for tournaments.

20. While staying in Las Vegas for a tournament, assistant Coach Gross amped up the religious based discrimination and harassment. He arranged for a trip to a strip club and invited team members including Plaintiff. When Plaintiff declined he was harassed and ridiculed by Gross.

21. Coach Gross arranged to provide alcoholic beverages to team members during the trip to Las Vegas, and harassed (and/or allowed teammates to harass) Plaintiff because he would not consume alcohol due to his religious beliefs.

22. While staying in Las Vegas, coach Gross hatched a plan involving team members and arranged to send two prostitutes/strippers to Plaintiff's room for the purpose of propositioning him with sex. The women asked Plaintiff if he was interested in "having a good time." Gross sent the women to Plaintiff's room to tempt him to violate his religious tenets and to sexually harass and embarrass him. Plaintiff sent the women away and was devastated that he would be singled out and discriminated against solely because of his religious beliefs.  One teammate reported to ISU that "I don't think they would have done that if he wasn't Mormon."

23. Coach Goeltz knew that this harassment had occurred, but instead of investigating the discrimination and holding coach Gross accountable, he questioned Plaintiff's sexuality and insinuated that Plaintiff was gay. Goeltz questioned "maybe he doesn't shoot that

way," because Plaintiff declined to let the women into his room. Coach Goeltz fostered a

culture of sexual harassment and religious discrimination by his open disdain for

Plaintiffs religious beliefs. Coach Goeltz failed to intervene to protect Plaintiff from the

open and obvious sexual harassment and religious discrimination.

24. After the Las Vegas trip, teammates ridiculed Plaintiff because of his religion.

Teammates reported:

    a. "I think that he was the butt of the joke because he was the only one who was

       different."

    b. "All of us were laughing and asking questions about why he was reading the

       Book of Mormon."

    c. "It was kind of combined with his religion. It's hard to explain, it just really

       separated him from the team. There was no one who was as religious as him on

       the team and that made it so that all of the jokes were on him."

    d. "After the Vegas incident with the two girls with his room, he got like 'what

       would your bishop say about that?' and stuff like that."

25. On April 3, 2015, the team traveled to Sacramento State University for a tennis meet.

Plaintiff informed the coaches that he was injured and would need to serve underhand.

Gross and Goeltz decided to forfeit Plaintiff's matches resulting in the team losing the

tournament. Plaintiff was pulled from the matches in Sacramento as retaliation for his

religious beliefs and as a manifestation of the contempt held for Plaintiff by Gross and

Geltz due to his religious beliefs. Plaintiff was harassed for not playing hurt.

26. Coach Gross called Plaintiff a "pussy" and accused Plaintiff of "not taking his tampon

out so he could play." Plaintiff was blamed by the coaches and team members for the

COMPLAINT AND DEMAND FOR JURY TRIAL - 6

team's loss in the tournament. Coach Goeltz referred to Plaintiff as "wimp" for not

playing in Sacramento when he was injured.

27. During the year coach Gross often used hostile profanity directed at Plaintiff including

calling Plaintiff a "fucker" and "pussy". The conduct of Gross and Goeltz amounted to

bullying, and various team members indicated that if they had been subjected to the

hostility and discrimination directed toward Plaintiff that they would have left the team in

the second week of school. One of Plaintiff's teammates indicated that the discrimination

and hostility became so severe that he was concerned that "Plaintiff would just lose it

someday."

28. Coach Goeltz participated in and encouraged the religious based discrimination. Goeltz

disparaged Plaintiff's religion by telling him "Mormonism is all about the money" and

that "people would have to be crazy to believe such bullshit."

29. Goeltz did nothing to protect Plaintiff from the targeted religious based harassment and

discrimination that he suffered at the hands of Gross and other teammates during the

year. One teammate reported to ISU that "I don't know if I explained it well, but one

thing that I would like to mention is that neither of the coaches stood up for [Plaintiff] or

told us to stop."

30. The verbal harassment and discrimination directed to Plaintiff by coach Goeltz and coach

Gross fostered an environment where coaches and teammates began to physically assault

Plaintiff as a manifestation of the verbal harassment. Coach Gross was a former student

tennis player for ISU from 2009 – 2013 and would often play against team members in

practice. During a series of practice combinations in March of 2015, a teammate reported

that "[Gross] started hitting [Plaintiff] more with the ball." One teammate reported to ISU

that "a lot of the teammates and coaches got really excited when someone would hit him (with a ball during matches) and I think that some people's only goal was to hit him."

31. On April 6, 2015, one of Plaintiff's teammates reported a concern to ISU about the way that Plaintiff was being discriminated against and harassed by Gross and Goeltz. The report was taken by athletic administrators Nancy Graciano and Matt Stuart.

32. On April 7, 2015, Ms. Graciano referred the report to the Director of Equal Opportunity and Affirmative Action at Idaho State University, and informed her of the report of discrimination and harassment against Plaintiff by coaches Goeltz and Gross and members of the men's tennis team. On the same date, Plaintiff contacted Ms. Graciano and scheduled a time to meet with her and report the harassment and discrimination which he had suffered throughout the 2014-2015 year by coaches Gross and Goeltz and members of the men's tennis team.

33. Stacey Gibson, the Idaho State University Director of Equal Opportunity, Affirmative Action and Diversity and Title IX Administrator conducted an investigation into the allegations reported, and issued a report following that investigation. See, Exhibit "A".

34. In the report, Ms. Gibson found that, "[t]he interviews conducted collectively paint a clear picture that the [Plaintiff] was subjected to severe, persistent and pervasive harassment and bullying. In particular they establish that the [Plaintiff's] religion was a contributing factor of that treatment; that [coach Gross] actively participated in that harassment; and that [coach Goeltz] accepted a team culture that promulgated such harassment and/or bullying of the [Plaintiff] by [Gross] and members of the men's tennis team."

35. In the report, Ms. Gibson found that "the culture of the ISU Men's Tennis Team was severely, pervasively and persistently hostile toward the [Plaintiff]."

36. Ms. Gibson recommended that head coach Bobby Goeltz be terminated.

37. Ms. Gibson noted that assistant coach Nate Gross had already resigned from ISU, but clarified that had he still been on staff she would recommend that he be terminated. Ms. Gibson wanted to ensure that Gross would not be able to serve in a similar capacity in the future, and therefore, recommended that he be considered ineligible for re-hire in any coaching role for ISU in the future.

## COUNT I
### (§ 1983 - Religious based Discrimination)

38. Plaintiff re-alleges and reiterates the allegations set forth in paragraphs 1-37 as if set forth fully and incorporates the same by reference.

39. The actions of the Defendants as described in the Complaint, *supra*, amount to religious based discrimination in that the acts were intended to deprive Plaintiff of his right to exercise his religion as protected by the First Amendment to the United States Constitution and 42 U.S.C. § 1983.

40. The actions of Defendants as described in the Complaint further amounted to religious motivated sexual harassment.

41. The Defendants engaged in and/or allowed a policy, pattern, and/or practice of religious based discrimination and/or religious based sexual harassment in violation of the First Amendment.

42. The actions of the Defendants as described herein have caused Plaintiff great mental anguish, humiliation, degradation, loss of enjoyment of life, physical and emotional pain

and suffering, inconvenience, lost scholarships and benefits, future pecuniary losses, and

other damages.

43. As a result of the Defendants' intentional, oppressive, targeted, malicious and outrageous

conduct as alleged herein, Plaintiff is entitled to recover punitive damages from

Defendants in an amount to be determined at trial.

## COUNT II
### (§ 1983 substantive due process- deprivation of property interest)

44. Plaintiff re-alleges and reiterates the allegations set forth in paragraphs 1-43 as if set forth

fully and incorporates the same by reference.

45. The Defendants intentionally, maliciously, and/or with gross negligence subjected

Plaintiff to religious based discriminatory treatment and religious based sexual

harassment by subjecting Plaintiff to threats, ridicule, sexual advances, physical assaults

and other wrongful conduct.

46. The Defendants have engaged in a policy, pattern, and/or practice of religious based

sexual harassment toward Plaintiff.  This amounted to a hostile environment that Plaintiff

could no longer endure, and caused him to be unable to return to ISU following his

freshman year.

47. As a direct and proximate cause of this conduct, Plaintiff has been deprived of his

property interest in the education available through ISU, and the scholarships awarded to

Plaintiff because of his membership on the Idaho State University Men's Tennis Team in

violation of the 14th Amendment.

48. The actions of the Defendants as described herein have caused Plaintiff great mental

anguish, humiliation, degradation, loss of enjoyment of life, physical and emotional pain

and suffering, inconvenience, lost scholarships and benefits, future pecuniary losses, and other damages.

49. As a result of the Defendants' intentional, oppressive, malicious and outrageous conduct as alleged, Plaintiff is entitled to recover punitive damages from the Defendants in an amount to be determined at trial.

## COUNT III
### (§ 1983 –Free Speech)

50. Plaintiff re-alleges and reiterates the allegations set forth in paragraphs 1-49 as if set forth fully and incorporates the same by reference.

51. The Defendants intentionally subjected Plaintiff to religious based discriminatory treatment and religious based sexual harassment and retaliation by subjecting Plaintiff to threats, ridicule, sexual advances, and other wrongful conduct as retaliation for Plaintiff speaking about his religion.

52. This conduct violated Plaintiff's right to free speech as protected by the First Amendment.

53. The actions of the Defendants as described herein have caused Plaintiff great mental anguish, humiliation, degradation, loss of enjoyment of life, physical and emotional pain and suffering, inconvenience, lost scholarships and benefits, future pecuniary losses, and other damages.

54. As a result of the Defendants' intentional, oppressive, malicious and outrageous conduct as alleged, Plaintiff is entitled to recover punitive damages from the Defendants in an amount to be determined at trial.

## COUNT IV
### (§ 1983-conspiracy)

55. Plaintiff re-alleges and reiterates the allegations set forth in paragraphs 1-54 as if set forth fully and incorporates the same by reference.

56. The Defendants intentionally, maliciously, and/or with gross negligence conspired together to subject Plaintiff to religious based discriminatory treatment and religious based sexual harassment by subjecting Plaintiff to threats, ridicule, sexual advances, physical assaults and other wrongful conduct.

57. The Defendants have engaged in conspiracy to direct religious based sexual harassment toward Plaintiff that manifested itself in sending two prostitutes/strippers to Plaintiff's room in Las Vegas with the intention of tempting him to violate his religious tenets. The Defendants' conspiracy caused a direct violation of Plaintiff's civil rights by subjecting him to constant religious based harassment.

58. As a direct and proximate cause of this conduct, Plaintiff has suffered a violation of his constitutional rights as protected by the First Amendment.

59. The actions of the Defendants as described herein have caused Plaintiff great mental anguish, humiliation, degradation, loss of enjoyment of life, physical and emotional pain and suffering, inconvenience, lost scholarships and benefits, future pecuniary losses, and other damages.

60. As a result of the Defendants' intentional, oppressive, malicious and outrageous conduct as alleged, Plaintiff is entitled to recover punitive damages from the Defendants in an amount to be determined at trial.

## COUNT V
### (§ 1983 negligent supervision and training)

61. Plaintiff re-alleges and reiterates the allegations set forth in paragraphs 1-60 as if set forth fully and incorporates the same by reference.

62. The Defendants acted with negligence in failing to properly hire, train and/or supervise head coach Bobby Goeltz, assistant coach Nate Gross, and members of the men's tennis team who engaged in discrimination against and harassment toward Plaintiff.

63. The Defendants' negligent failure to supervise and/or train fostered an environment where Goeltz, Gross, and members of the men's tennis team were free to direct religious based discrimination and sexual harassment toward Plaintiff.

64. As a direct and proximate cause of this conduct, Plaintiff has suffered a violation of his constitutional rights as protected by the First Amendment.

65. The actions of the Defendants as described herein have caused Plaintiff great mental anguish, humiliation, degradation, loss of enjoyment of life, physical and emotional pain and suffering, inconvenience, lost scholarships and benefits, future pecuniary losses, and other damages.

66. As a result of the Defendants' intentional, oppressive, malicious and outrageous conduct as alleged, Plaintiff is entitled to recover punitive damages from the Defendants in an amount to be determined at trial.

## COUNT VI
### (Special Relationship – Negligence)

67. Plaintiff re-alleges and reiterates the allegations set forth in paragraphs 1-66 as if set forth fully and incorporates the same by reference.

COMPLAINT AND DEMAND FOR JURY TRIAL - 13

68. The Defendants had a duty to protect Plaintiff from religious based discrimination and/or harassment as a student at ISU, and while he was under the care of ISU. Defendants breached their duty when they subjected Plaintiff to religious based discriminatory treatment and religious based sexual harassment and retaliation by subjecting Plaintiff to threats, ridicule, sexual advances, and other wrongful conduct.

69. As a direct and proximate cause of this conduct, Plaintiff has suffered a deprivation of his civil rights as set forth herein.

70. The actions of the Defendants as described herein have caused Plaintiff great mental anguish, humiliation, degradation, loss of enjoyment of life, physical and emotional pain and suffering, inconvenience, lost scholarships and benefits, future pecuniary losses, and other damages.

71. As a result of the Defendants' intentional, oppressive, malicious and outrageous conduct as alleged, Plaintiff is entitled to recover punitive damages from the Defendants in an amount to be determined at trial.

**COUNT VII**
**(Special Relationship – Gross negligence)**

72. Plaintiff re-alleges and reiterates the allegations set forth in paragraphs 1-71 as if set forth fully and incorporates the same by reference.

73. The Defendants had a duty to protect Plaintiff from religious based discrimination and/or harassment as a student at ISU. Defendants' conduct as set forth herein amounted to gross negligence and/or recklessness in breach of their duty when they subjected Plaintiff to religious based discriminatory treatment and religious based sexual harassment and

retaliation by subjecting Plaintiff to threats, ridicule, sexual advances, and other wrongful conduct.

74. As a direct and proximate cause of this conduct, Plaintiff has suffered a deprivation of his civil rights as set forth herein.

75. The actions of the Defendants as described herein have caused Plaintiff great mental anguish, humiliation, degradation, loss of enjoyment of life, physical and emotional pain and suffering, inconvenience, lost scholarships and benefits, future pecuniary losses, and other damages.

76. As a result of the Defendants' intentional, oppressive, malicious and outrageous conduct as alleged, Plaintiff is entitled to recover punitive damages from the Defendants in an amount to be determined at trial.

## COUNT VIII
### (Intentional Infliction of Emotional Distress)

77. Plaintiff re-alleges and reiterates the allegations set forth in paragraphs 1-76 as if set forth fully and incorporates the same by reference.

78. The Defendants intentionally subjected Plaintiff to religious based discriminatory treatment and religious based sexual harassment causing intentional infliction of emotional distress.

79. The Defendants' conduct was extreme and outrageous and caused Plaintiff to suffer severe emotional distress, to be proven at trial.

80. The actions of the Defendants as described herein have caused Plaintiff great mental anguish, humiliation, degradation, loss of enjoyment of life, physical and emotional pain

and suffering, inconvenience, lost scholarships and benefits, future pecuniary losses, and other damages.

81. As a result of the Defendants' intentional, oppressive, malicious and outrageous conduct as alleged, Plaintiff is entitled to recover punitive damages from the Defendants in an amount to be determined at trial.

## COUNT IX
### (Negligent Infliction of Emotional Distress)

82. Plaintiff re-alleges and reiterates the allegations set forth in paragraphs 1-81 as if set forth fully and incorporates the same by reference.

83. The Defendants negligently subjected Plaintiff to religious based discriminatory treatment and religious based sexual harassment causing Plaintiff to suffer emotional distress.

84. Plaintiff has suffered physical manifestations of emotional distress in the form of stress, loss of sleep, depression, anxiety, fear, and other expressions of distress

85. The actions of the Defendants as described herein have caused Plaintiff great mental anguish, humiliation, degradation, loss of enjoyment of life, physical and emotional pain and suffering, inconvenience, lost scholarships and benefits, future pecuniary losses, and other damages.

86. As a result of the Defendants' intentional, oppressive, malicious and outrageous conduct as alleged, Plaintiff is entitled to recover punitive damages from the Defendants in an amount to be determined at trial.

## ATTORNEYS FEES

As a direct and proximate result of the Defendants' actions and/or failures to act, the Plaintiff has been compelled to retain the services of counsel, and has thereby incurred and will continue to incur costs and attorney's fees which should be paid by the Defendants pursuant to 42 U.S.C. § 1988; and all other applicable laws allowing for the recovery of costs or attorney fees in this action.

## DEMAND FOR JURY TRIAL

The Plaintiff demands trial by jury as to all issues triable to a jury in this action as set forth more fully above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

A.      All scholarships and benefits Plaintiff would have received but for the actions of the Defendants, including but not limited to future pecuniary losses and prejudgment interest;

B.      Compensatory and general damages as well as statutorily available damages in amount to be determined at trial;

C.      Prejudgment interest in all amounts claimed;

D.      Punitive damages as allowed by law as against the above-named Defendants;

E.      An award of reasonable attorney's fees, costs and litigation expenses; and

F.      Such other relief as the Court may deem just or equitable.


Dated this 20th day of May, 2016.


_____/s/_____
SAM L. ANGELL