UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ORIN DUFFIN, | Case No. 4:16-cv-00209-BLW |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| IDAHO STATE UNIVERSITY, *et. al.*, | |
| Defendants. | |

## INTRODUCTION

The Court has before it Plaintiff's Motion for Partial Summary Judgment (Dkt. 26), Defendants' Motion for Summary Judgment (Dkt. 27), and Defendants' Motion to Strike (Dkt. 30). The Court heard oral argument on September 21, 2017, and now issues the following decision.

## BACKGROUND

Orin Duffin is a member of the Church of Jesus Christ of Latter Day Saints ("LDS Church"). In 2014-15, he played on the Idaho State University ("ISU") men's tennis team during his freshman year in college. During that time, Jeff Tingey was the athletic

director, Bobby Goeltz was the head coach of the tennis team, and Nate Gross was a graduate assistant for the tennis team. Duffin claims that he was harassed by Goeltz and Gross because of his religion. Specifically, he states that he was told that his decision to serve an LDS mission was insane, that he was disparaged because he would not drink alcohol, that he was harassed about his sexual orientation, that he was harassed about whether he watched pornography, had sex with women, or masturbated, and that two girls were sent to his hotel room in Las Vegas during a tennis tournament to proposition him for sex.

Duffin quit the tennis team after he was scratched from an out-of-state tournament. He then filed his Complaint on May 20, 2016. Based upon stipulated deadlines, the Court entered a Case Management Order on August 8, 2016. (Dkt. 20). The order set January 30, 2017 as the dispositive motion deadline. On January 12, 2017, the parties filed a stipulation to extend the dispositive motion deadline to July 14, 2017. (Dkt. 21). The Court agreed to the stipulation because Duffin was out of the District of Idaho for an extended period of time while serving a two-year mission for the LDS Church. (Dkt. 22). The parties filed their cross-motions for summary judgment on July 14, 2017.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

When cross-motions for summary judgment are filed, the Court must independently search the record for factual disputes. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross-motions for summary judgment – where both parties essentially assert that there are no material factual disputes – does not vitiate the court's responsibility to determine whether disputes as to material fact are present. *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

## ANALYSIS

**1.      Defendants' Motion for Summary Judgment**

Defendants ask the Court to dismiss all of Duffin's claims based upon Eleventh Amendment immunity, qualified immunity, or failure to state a claim. The Court will address each of these arguments below.

### A.      *Eleventh Amendment Immunity*

Absent consent by the State, the Eleventh Amendment bars suits in federal court against the State or its agencies. *Krainski v. Nevada*, 616 F.3d 963, 967 (9th Cir.2010). On more than one occasion, this Court has previously held that ISU is an arm of the State of Idaho. *Sadid v. Idaho State University*, 837 F.Supp.2d 1166, 1172 (D.Idaho 2011);

*Ferguson v. Greater Pocatello Chamber of Commerce, Inc.*, 647 F.Supp. 190, 193

(D.Idaho 1985). Neither party disputes this holding. Thus, the only question here is

whether ISU has consented to this lawsuit.

"A state waives its Eleventh Amendment immunity if it 'unequivocally evidence[s

its] intention to subject itself to the jurisdiction of the federal court.'" *Johnson v. Rancho*

*Santiago Community College Dist.,* 623 F.3d 1101, 1021 (9th Cir. 2010); *citing Hill v.*

*Blind Indus. & Servs. of Md.*, 179 F.3d 754, 758 (9th Cir.1999). "A state may waive its

sovereign immunity through conduct that is incompatible with an intent to preserve that

immunity." *Id.* (Internal citation omitted). Notably, the Ninth Circuit has "found that state

defendants engaged in conduct 'incompatible with' an intent to preserve sovereign

immunity when they raised a sovereign immunity defense only belatedly, after extensive

proceedings on the merits." *Id.* In *Johnson,* the Ninth Circuit determined that the

defendant waived Eleventh Amendment immunity when it participated in discovery, and

did not raise it in its motion to dismiss or motion for summary judgment. The court noted

that "[i]n circumstances like these, we deem the defendant to have made a tactical

decision to delay asserting the sovereign immunity defense[,]" and that "[s]uch tactical

delay undermines the integrity of the judicial system[,] . . . wastes judicial resources,

burdens jurors and witnesses, and imposes substantial costs upon the litigants." *Johnson,*

623 at 1022 (Internal quotations and citations omitted).

Here, Defendants did not file a motion to dismiss, but raised sovereign immunity

in their motion for summary judgment. However, that motion was delayed by stipulation,

and thus was filed more than two years after the events supporting the allegations in the case. This is significant because Duffin's claims are likely now barred in state court by the statute of limitations. See Idaho Code Ann. § 5–219(4) (two-year statute of limitations for personal injury actions); *Knox v. Davis*, 260 F.3d 1009, 1012–13 (9th Cir.2001) (for § 1983 claims, federal courts apply the forum state's personal injury statute of limitations and federal law for determining accrual; a § 1983 claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of the action).

Moreover, the law in Idaho is well-established that ISU, and presumably all other state universities, are arms of the state and protected by Eleventh Amendment immunity. Therefore, there was no need to develop any factual basis on that issue before asserting Eleventh Amendment immunity. Allowing Defendants to assert Eleventh Amendment immunity now would fly in the face of the Rule 1 admonition that the Court construe and apply the rules and procedures in a manner that secures the just, speedy and inexpensive resolution of all disputes. Defendants initially chose to defend the claims on the merits in federal court by engaging in discovery, stipulating to extend deadlines, and waiting until the dispositive motion deadline to assert Eleventh Amendment immunity. The Court can only conclude that this was a tactical attempt to deny Duffin his day in Court. The Court will not allow Eleventh Amendment immunity to be used that way. Accordingly, the Court finds that Defendants have waived their sovereign immunity defense, and will address the claims on the merits.

## B.  *Qualified Immunity (Counts I-V)*

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity gives government officials "breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011). To determine whether a government official is entitled to qualified immunity, the Court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, (1) violated a statutory or constitutional right, (2) that was clearly established at the time of the challenged conduct. *Moonin v. Tice*, 868 F.3d 853, 860 (9th Cir. 2017). Courts may use their discretion deciding which of the two prongs to analyze first. *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009).

Here, Duffin asserts that the defendants violated his clearly established constitutional right to the free exercise of religion under the First Amendment. But Duffin improperly relies on the Religious Freedom Restoration Act ("RFRA") and *Mendocino Envtl. Center. v. Mendocino Cnty.*, 192 F.3d 1283 (9th Cir. 1999) as the standard for his claim. RFRA applies only to the federal government, *see City of Boerne v. Flores*, 521 U.S. 507, 536, (1997), and *Mendocino* applies only to free speech claims, not free exercise of religion claims.

A free exercise claim "must show that the government action in question substantially burdens the person's practice of her religion." *Jones v. Williams,* 791 F.3d 1023, 1031 (9th Cir. 2015) (*citing Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir.1987), aff'd sub nom. *Hernandez v. C.I.R.*, 490 U.S. 680, 699, (1989). "'A substantial burden . . . place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* at 1031-32 (*quoting Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir.2013)).

In *Jones,* the Ninth Circuit specifically stated that "[i]t was well established in 2007, and remains so today, that government action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego her sincerely held religious beliefs or to engage in conduct that violates those beliefs." *Id.* at 1033. "[R]equiring a believer to defile himself by doing something that is completely forbidden by his religion is different from (and more serious than) curtailing various ways of expressing beliefs for which alternatives are available." *Id.* (Internal citation omitted). Jones was a prison inmate, and the Ninth Circuit indicated that prison officials had fair and clear warning that Jones had a right to abstain from conduct directly violative of his religious beliefs. That is, he had a right not to eat or handle pork because it "requires him to defile himself by doing something that is completely forbidden by his religion." *Id.* (Internal quotation and citation omitted). And there were no alternative

means of allowing Jones to exercise his right to avoid handling pork other than not ordering him to handle pork. *Id.*

But prison officials had this clear warning because of precedent like *Ashelman v. Wawrzaszek*, 111 F.3d 674, 677 (9th Cir.1997), where the Ninth Circuit held that a Jewish inmate had the right to a kosher diet and disposable utensils. In that case, the court explained that in cases of dietary restrictions, "the inmate had no alternative means of exercising the right, whereas there were obvious, easy alternatives that the prison could implement. The existence of reasonable alternatives decisively tip[ped] the balance in favor of [the inmate's] free exercise right." *Id.* (Internal quotations and citations omitted).

But, significantly, both *Jones* and *Ashelman* involved claims by prisoners who were compelled by the conditions of confinement to violate the precepts of their religion. Thus, those cases only give notice that prison officials violate an inmate's First Amendment rights if their policies "coerce the individual to forego her sincerely held religious beliefs or to engage in conduct that violates those beliefs," *Jones,* at 1033, and the inmate has "no alternative means" of exercising their religious beliefs and practices. *Ashelman*, at 677. Thus, Duffin has pointed to no such clear and fair warning, and the Court has found none. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v Barkes*, 135 S.Ct. 2042 (2017) (per curiam). Broad principles ordinarily cannot constitute clearly established law. *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (per curiam). Rather, "clearly established law must be 'particularized' to the facts of the case." *Id.* At

the time of the offense here, there was no clearly established law that a coach, teacher, or administrator violates a student's free exercise of his religion by disparaging his religious beliefs or even by sending women to his hotel room to proposition him to have sex with them in violation of his religious beliefs. Thus, the first prong of qualified immunity is met.

Moreover, the Court is not persuaded that the defendants' conduct even violated Duffin's constitutional right. Defendants were clearly harassing Duffin about his religion, and trying to test his adherence to his beliefs – especially when they invited him to a night club and sent women to his hotel room to proposition him for sex. Such actions were boorish and entirely inappropriate. In doing so, they likely intended to discourage Duffin from practicing his religion and following the tenets of his faith, by presenting him with opportunities to act contrary to his religious beliefs. But, their actions do not rise to the level of coercion or substantial pressure to modify Duffin's behavior, which is needed to establish a free exercise of religion claim.

In sum, the Court finds that the defendants are entitled to qualified immunity. This, in turn, requires the dismissal of Counts I-V. The first five counts of the Complaint are listed in the Complaint as Count I (§ 1983 – religious based discrimination), Count II (§ 1983 substantive due process – deprivation of property interest), Count III (§ 1983 – free speech), Count IV (§ 1983 – conspiracy), and Count V (§ 1983 – negligent supervision and training). *Complaint,* pp.9-13, Dkt. 1.

In order to prevail on a § 1983 claim, as pled in Count I, Duffin must show that (1) acts by the defendant, (2) under color of state law, (3) deprived him of federal rights, privileges or immunities, and (4) caused damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163–64 (9th Cir.2005) (*quoting Shoshone–Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir.1994)). As explained above, Defendants are entitled to qualified immunity on Duffin's religious discrimination claim, and Count I will therefore be dismissed.

As to Count II, Duffin asserts in his Complaint that he was deprived of his property interest in an education at ISU and an athletic scholarship for the tennis team at the university. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985 (9th Cir. 2007)(internal citations omitted). The Due Process Clause does not create substantive rights in property; the property rights are defined by reference to state law." *Portman v. County of Santa Clara,* 995 F.2d 898, 904 (9th Cir. 1993). In his Complaint, Duffin points to no state law creating a property interest in his education or scholarship, and he failed to respond to Defendants' brief arguing that there is no such law. Moreover, the Court is unaware of any such law. Therefore, Count II will be dismissed.

Count III references a free speech claim, but it is really just a restatement of Duffin's religious freedom claim asserted in Count I. There are no facts in the record to support a free speech violation claim. Thus, Count III will be dismissed as well.

Count IV is likewise just a restatement of Count I, adding an allegation that the defendants conspired together to violate Duffin's free exercise rights. But [c]onspiracy is not itself a constitutional tort under § 1983." *Lacey v. Maricopa Cty.,* 693 F.3d 896, 935 (9th Cir. 2012). There must be an underlying constitutional violation. *Id.* There is no underlying claim here because the Court has already dismissed Duffin's free exercise claim. Accordingly, Count IV will also be dismissed.

Count V asserts a federal failure to supervise and train claim. To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must satisfy four criteria: (1) the plaintiff possessed a constitutional right of which she was deprived; (2) the municipality had a policy; (3) the policy amounts to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy is the moving force behind the constitutional violation. *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir.1992). Under the well-known *Monell* case, the Supreme Court made clear that a municipality may not be held liable under § 1983 solely because it employed a constitutional wrongdoer. *Monell v. Dept. of Social Services*, 436 U.S. 658, (1978). More importantly, a municipality cannot be held liable under § 1983 where no constitutional violation has occurred. *Sweaney v. Ada County*, 119 F.3d 1385, 1392 (9th Cir.1997). As

explained above, no constitutional violation occurred in this case. Accordingly, Count V will be dismissed.

## C.     *Supplemental Jurisdiction*

The Court may decline to exercise supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1447(c)(3). The Court has dismissed all such claims. But whether to exercise supplemental jurisdiction in this circumstance is "purely discretionary." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 129 S.Ct. 1862, 1866 (2009). The Court should consider economy, convenience, fairness, and comity when determining whether to exercise supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 351 (1988).

Discovery is closed and all dispositive motions have been addressed once this Memorandum Decision and Order is issued. The case is ready to be set for trial after the Court hears from the Idaho Supreme Court on the certified question of law. (See Section 1.D below). Plus, the case has already been delayed several months while Duffin was absent from the District. Moreover, this Court is now intimately familiar with the facts and posture of the case. Thus, it only makes sense for this Court to try the case instead of asking the state district court to learn what this Court already knows about the case. Finally, as discussed above, Defendants could have asked the Court to apply Eleventh Amendment immunity and send the case to state court at the outset of the case. To send the case to state court now would undermine the purpose of Eleventh Amendment

immunity, judicial economy, convenience, and fairness. Accordingly, the Court will exercise supplemental jurisdiction over Duffin's state law claims.

### D.    *Negligence and Gross Negligence (Counts VI-VII)*

The elements of negligence are well established in Idaho: (1) duty; (2) breach; (3) causation; and (4) damages. *McPheters v. Maile,* 64 P.3d 317, 321 (Idaho 2002). Defendants contend there was no duty in this case. Like most states, in Idaho "[t]here is ordinarily no affirmative duty to act to assist or protect another absent unusual circumstances, which justify imposing such an affirmative responsibility." *Coghlan v. Beta Theta Pi Fraternity,* 987 P.2d 300, 311 Idaho 1999). The duty arises "only when a special relationship exists between the parties." *Id.* (citing Restatement (Second) of Torts § 314A (1965)). The court in *Coghlan* noted that the college-student relationship is not listed in the Restatement as one of the special relations giving rise to a duty to aid or protect, but also acknowledged that the list was not exclusive. *Id.* Instead, to determine whether a special relationship exists "requires an evaluation of 'the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection.'" *Id.* (citing W. Prosser, Law of Torts 333 (3d ed.1964).

Both parties cite *Coghlan* in support of their argument – Duffin that the Court should find a special relationship, and Defendants that the Court should not. After citing cases from the Third Circuit and Utah state court, the Idaho Supreme Court in *Coghlan* "decline[d] to hold that Idaho universities have the kind of special relationship creating a duty to aid or protect adult students from the risks associated with the students' own

voluntary intoxication." *Id.* at 312 (citing *Bradshaw v. Rawlings*, 612 F.2d 135 (3d

Cir.1979) and *Beach v. University of Utah*, 726 P.2d 413 (Utah 1986)). The cases cited

by the Idaho Supreme Court relied on the adult status of college students, and the

diminished custodial role of modern universities.

The Court understands, and agrees with, the observation that most college students

are adults, and a university does not have a special relationship with students that requires

the university to protect them from the risks associated with the students' own voluntary

intoxication. But that is not the "sum total" of the facts in this case. In fact, in some ways

this case involves almost an exact opposite set of facts – a student having to decline an

invitation from university personnel to a party where alcohol is served, among other

serious allegations. Thus, *Coghlan* does not control here.

But a search of Idaho and Ninth Circuit law turns up nothing more directly on

point than *Coghlan*. A search of cases throughout the country turns up some helpful

decisions, but nothing directly on point. For example, The United States District Court

for the District of Oregon recently explained that there is no precedent in Oregon or the

Ninth Circuit recognizing a special relationship between college students or student

athletes and the universities they attend. *Austin v. University of Oregon,* 205 F.Supp.3d

1214, 1229 (D.Oregon 2016). Citing *Freeman v. Busch*, 349 F.3d 582 (8th Cir.2003), the

*Austin* court stated that the general rule is that no special relationship exists between a

college and its own students. *Id*. at 587. But the court noted that courts have reached

different conclusions on this matter. On the one hand, in both *Kleinknecht v. Gettysburg*

*Coll.*, 989 F.2d 1360 (3d Cir.1993) and *Davidson v. Univ. of N.C.*, 543 S.E.2d 920 (N.C.App.2001) the court found a special relationship existed between student athletes and universities in the context of sports related injuries. On the other hand, in *Orr v. Brigham Young Univ.*, 960 F.Supp. 1522, 1526–28 (D.Utah 1994), *Swanson v. Wabash Coll.*, 504 N.E.2d 327 (Ind.Ct.App.1987), and *Fisher v. Northwestern State Univ.*, 624 So.2d 1308 (La.Ct.App.1993), the court found no special relationship. Notably, the court in *Austin* pointed out that the courts finding special relationships have done so when the incident giving rise to the negligence claim occurred during a supervised school practice or other event and arose out of an injury related thereto.

Based upon these decision, the Court is tempted to make an educated guess about whether the Idaho Supreme Court would find a special relationship in this case. However, the Court is not sufficiently convinced it knows how the Idaho Supreme Court would rule. Moreover, the justices of the Idaho Supreme Court have recently informed this Court of their goal to issue decisions on questions certified to them on an expedited basis. Under these circumstances, the Court finds that there is a controlling question of law as to which there is no controlling precedent in the decisions of the Idaho Supreme Court, and an immediate determination of Idaho law with regard to the certified question would materially advance the orderly resolution of this case. Idaho App. R. 123(a). The question:

> Is there a "special relationship" between Plaintiff Orin Duffin and Defendant Idaho State University which would fulfill the duty prong of a negligence claim?

The parties may submit a short brief, no more than five pages, suggesting any changes to this question. The Court will then certify a final version of the question to the Idaho Supreme Court.

### E. *Intentional Infliction of Emotional Distress (Count VIII)*

In Idaho, a claim for intentional infliction of emotional distress requires a plaintiff to show that (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the conduct and the emotional distress, and (4) the emotional distress was severe. *See Nation v. State Dep't of Correction*, 144 Idaho 177, 158 P.3d 953, 968 (2007). "Unlike the tort of negligent infliction of emotional distress, intentional infliction of emotional distress does not require injury or a physical manifestation resulting from emotional turmoil." *Alderson v. Bonner*, 132 P.3d 1261, 1269 (Id.Ct.App.2006) (*citing Curtis v. Firth,* 850 P.2d 749, 752 (Idaho 1992)). However, the plaintiff must show both outrageous conduct and severe emotional distress. *Hatfield v. Max Rouse & Sons Northwest*, 606 P.2d 944, 953 (1980). The distress must be so severe that "no reasonable man could be expected to endure it." *Davis v. Gage*, 682 P.2d 1282, 1288 (Id.Ct.App.1984) (citations omitted).

Here, the Court finds that there is at least a question of fact as to whether the defendants' conduct was intentional or reckless, whether the conduct was extreme and outrageous, and whether there was a causal connection between the conduct and Duffin's emotional distress. Much of the conduct complained about does not reach the level needed to support a claim for intentional infliction of emotional stress – such as being

critical of Duffin, swearing at him, inviting him to a party where there is alcohol, or generally treating him harshly. But some of the alleged conduct creates an issue of fact on whether it reaches the level of outrageousness needed to support the claim. For example, questioning Duffin about his sexual relationships with women, whether he watched pornography, and whether he masturbated (*Duffin Depo.*, 43:18-25, Dkt. 26-4), calling Duffin one of the worst f---ing Mormons (*Id.* at 44:8-15), and sending women to Duffin's room to solicit sex with Duffin to test his devotion to his religion (*Id.* at 61:8 – 62:12).

But Duffin falls short in his allegation of severe emotional distress. The Court recognizes, as Idaho courts have, that severity is generally an issue for the jury. However, Idaho courts have often made decisions as a matter of law that the emotional injury was not sufficiently severe. In *Jeremiah v. Yanke Machine Shop, Inc.*, 953 P.2d 992, 999 (1998), the Supreme Court of Idaho held that, "being seriously frustrated from enduring a hostile and abusive workplace" was insufficient. A child's screams, fear, and loss of sleep from seeing his mother being yelled at by another motorist after a car accident was insufficient. *Payne v. Wallace*, 32 P.3d 695, 698–99 (Id.Ct.App.2001). A plaintiff's testimony that they were "upset, embarrassed, angered, bothered and depressed" was insufficient. *Davis*, 682 P.2d at 1288.

Here, the only support for Duffin's claim that his distress was severe is the following testimony from his deposition:

Q: And what are you specifically considering?

A: Just going to a counselor and being able to talk through everything that I went through that happened at Idaho State University, and to, essentially, get more closure on it and be able to move past it and have it stop affecting me.

Q: Do you feel a need that you have to go to a medical doctor at all for your -- from what you experienced?

A: I do not.

Q: Have you experienced things such as sleepless nights as a result of your experience?

A: In the process, I did. I believe I was depressed and things like that. And then on my mission, I – it was one of the harder things for me to just – to move past and to drop just because it was the big – a year of my life that was absolute misery and torture and things like that. And so it would kind of pop up every – every couple weeks where I had a really bad day, and I'd just remember it. And then I'd get down on myself. And it was just always kind of popping up here and there.

*Duffin Depo.,* 82:11 – 83:7, Dkt. 27-4. This description of Duffin's distress falls squarely

within the type of distress Idaho courts have consistently found not to reach the level of

severity necessary to an intentional infliction of emotional distress claim. This type of

distress is not so severe that "no reasonable man could be expected to endure it." *Davis*,

682 P.2d at 1288. Thus, although the Court believes the type of conduct here was the type

that could have caused severe emotional distress, there is simply no evidence that it did

so in this case. Accordingly, the Court will grant summary judgment in favor of

defendants on the intentional infliction of emotional distress claim.

## F. *Negligent Infliction of Emotional Distress (Count IX)*

In Idaho, a claim for negligent infliction of emotional distress requires a showing

of the following elements: (1) a legally recognized duty, (2) a breach of that duty, (3) a

causal connection between the defendant's conduct and the breach, and (4) actual loss or damage. *Johnson v. McPhee*, 210 P.3d 563, 574 (Idaho Ct.App.2009) (*citing Brooks v. Logan*, 903 P.2d 73, 78 (1995)). Negligent infliction of emotional distress also requires there to be some physical manifestation of the plaintiff's emotional injury. *Frogley v. Meridian Joint Sch. Dist. No. 2*, 314 P.3d 613, 624 (2013); *Sommer v. Elmore Cnty.*, 903 F.Supp.2d 1067, 1075 (D.Idaho 2012).

Here, Defendants attack only Duffin's proof of the fourth element. Defendants suggest that although sleeplessness can be a physical manifestation of an emotional injury, Duffin has offered no proof of sleeplessness. But deposition testimony is evidence, and the deposition testimony cited above creates at least a question of fact as to whether Duffin suffered sleeplessness from emotional distress. When asked whether he has experienced things such as sleepless nights as a result of his experience, he states, "In the process, I did." *Duffin Depo.,* 82:21-23, Dkt. 27-4. Accordingly, the Court will deny the motion for summary judgment on the negligent infliction of emotional distress claim.

## 2.      Plaintiff's Motion for Summary Judgment

In the introduction of Duffin's brief in support of his motion for summary judgment, he asks the Court to grant him summary judgment "on the issue of liability on all claims." *Plf. Br.,* p.2, Dkt. 26-1. However, he does not address all claims in the brief. Regarding his federal claims, Duffin only addresses his religious discrimination claim and his negligent supervision and training claim. As explained above, those claims will

be dismissed. Accordingly, the motion is denied as to those claims, as well as to all federal claims not addressed in the brief.

Regarding his state law claims, Duffin addresses only his negligence claims. As explained above, the Court must certify a question of law to the Idaho Supreme Court on those claims. Accordingly, the Court will deny the motion on the negligence claims, as well as the other state law claims not addressed in the brief. Thus, the motion is denied in its entirety.

**3.      Individual Capacity**

The parties dispute whether Defendants Gross and Goeltz are being sued in their official or individual capacity – Plaintiff says individual; Defendants say official. The parties argue about how it should be determined in the context of § 1983 claims. However, it makes no difference to the § 1983 claims because the Court has determined that both defendants are entitled to qualified immunity. Whether it makes a difference to the state law claims was not addressed in the briefs, and the Court is not sure whether it makes a difference. If necessary, the Court will address the issue after it receives the Idaho Supreme Court's decision on the certified question of law.

**ORDER**

**IT IS ORDERED:**

1.      Plaintiff's Motion for Partial Summary Judgment (Dkt. 26) is **DENIED**.

2.      Defendants' Motion for Summary Judgment (Dkt. 27) is **GRANTED in part** and **DENIED in part** as explained above.

3.      Defendants' Motion to Strike (Dkt. 30) is **DEEMED MOOT**.

4.      The parties may submit a 5-page brief suggesting changes to the question

the Court intends to certify to the Idaho Supreme Court, and explaining

why the changes are necessary. If a party does not wish to file such a brief,

the party shall file a short notice indicating it does not suggest any changes

to the questions. The brief or notice shall be filed within 14 days of the date

of this Memorandum Decision and Order.

DATED: December 21, 2017

B. Lynn Winmill
Chief Judge
United States District Court